1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9                   DISTRICT OF ARIZONA

10

11  Tracy Crane,                           )
12              Plaintiff,                  )    2:14-cv-2415 JWS
13        vs.                               )    ORDER AND OPINION
14  AHC of Glendale, LLC, dba              )
    Advanced Healthcare of Glendale;       )
15  and John Doe 1-10,                      )    [Re: Motion at Docket 26]
16              Defendants.                 )
                                            )
17

18               **I.  MOTION PRESENTED**

19        At docket 26, Defendant AHC of Glendale, LLC ("AHC") moves for summary

20  judgment on all claims brought by Plaintiff Tracy Crane ("Plaintiff").  Plaintiff responds at

21  docket 33.  AHC replies at docket 34.  The parties filed statements of supporting facts

22  and responses to those statements at dockets 28-1, 32, 35, and 36.  Oral argument

23  was not requested and would not be of additional assistance to the court.

24                    **II.  BACKGROUND**

25        Plaintiff began working for AHC on October 11, 2011, as a Certified Physical

26  Therapist Assistant ("CPTA").  On September 4, 2012, Plaintiff was involved in an

27  incident at work.  Based on the incident, Plaintiff pursued a workers' compensation

28  claim for an injury to her back and right shoulder.  While the claim was pending, a

doctor placed Plaintiff on restricted work status.  The restrictions prevented her from lifting, pushing, or pulling more than thirty pounds without assistance, and prevented her from reaching overhead with her right arm.[1]  During her recovery, AHC provided additional staff members to assist Plaintiff with her duties.  AHC also allowed her to audit charts and do paperwork.  Her work limitations became more restrictive over time: her thirty-pound weight limitation was lowered to ten pounds, and she was also told to avoid repetitive stooping and bending and to avoid any twisting, turning or awkward positioning.[2]  In mid-May of 2013, Plaintiff's workers' compensation case was closed based in part on an independent medical exam that concluded Plaintiff did not show signs of permanent impairment or the need for ongoing pain management or work restrictions in relation to the work-place incident.  In light of the workers' compensation decision, AHC concluded that Plaintiff's physical injuries were not a result of the work incident and that it would no longer accommodate her work restrictions.  AHC administrators told Plaintiff that in order to be placed back on the schedule, she would need to provide a doctor's clearance to work without restrictions.  She did not obtain the clearance.  Instead, her work restrictions became more prohibitive: her weight limitation for activities that involved lifting, pushing, or pulling was reduced again from ten pounds to five pounds, and she was not allowed to engage in any repetitive stooping, bending, or kneeling or to use her right upper arm.[3]  She has not been placed back on the schedule and her insurance was terminated.

Plaintiff filed a complaint against AHC.  Her complaint alleges that AHC violated the Americans with Disabilities Act ("ADA") when it refused to continue to accommodate her disability because it believed that her physical limitations were not a result of a

---

[1]Doc. 32-1 at p. 15 (Plaintiff's Ex. C).

[2]Doc. 32-1 at p. 17 (Plaintiff's Ex. C).

[3]Doc. 32-1 at p. 19 (Plaintiff's Ex. C).

work-related injury but, rather, just a personal medical condition.[4]  She seeks damages for emotional distress, pain, suffering, anxiety, loss of enjoyment of life, and lost wages. She also seeks punitive damages.  Her complaint also alleges that AHC violated the Family and Medical Leave Act ("FMLA").  She alleges that she was eligible for and entitled to take leave under FMLA and that AHC knew as much, but nonetheless failed to advise her of her rights and terminated her employment without allowing her to take FMLA leave.  She states that the AHC's actions constitute unlawful interference with her rights under FMLA.  AHC moves for summary judgment on both the ADA and the FMLA claim.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5]  The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[6]  Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[7]  However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[8]

---

[4]42 U.S.C. § 12112(b)(5).

[5]Fed. R. Civ. P. 56(a).

[6]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[7]*Id.*

[8]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

-3-

1    The moving party has the burden of showing that there is no genuine dispute as

2 to any material fact.[9]  Where the nonmoving party will bear the burden of proof at trial

3 on a dispositive issue, the moving party need not present evidence to show that

4 summary judgment is warranted; it need only point out the lack of any genuine dispute

5 as to material fact.[10]  Once the moving party has met this burden, the nonmoving party

6 must set forth evidence of specific facts showing the existence of a genuine issue for

7 trial.[11]  All evidence presented by the non-movant must be believed for purposes of

8 summary judgment and all justifiable inferences must be drawn in favor of the

9 non-movant.[12]  However, the non-moving party may not rest upon mere allegations or

10 denials, but must show that there is sufficient evidence supporting the claimed factual

11 dispute to require a fact-finder to resolve the parties' differing versions of the truth at

12 trial.[13]

## IV.  DISCUSSION

**A.    ADA**

An ADA claim is subject to the familiar burden-shifting framework derived from

*McDonnell Douglas Corp. v. Green*.[14]  A plaintiff must first establish a prima facie case

of discrimination on account of disability.  A prima facie case in context of the ADA

requires a plaintiff to put forth evidence to show that she: (1) is "disabled" within the

meaning of the ADA; (2) is a "qualified individual" able to perform the essential

functions of the job with or without reasonable accommodation; and (3) suffered an

---

[9]*Id.* at 323.

[10]*Id.* at 323-25.

[11]*Anderson,* 477 U.S. at 248-49.

[12]*Id.* at 255.

[13]*Id.* at 248-49.

[14]411 U.S. 792 (1973).  *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49-50 (2003) (applying the *McDonnell Douglas* burden-shifting framework to an ADA disability claim).

adverse employment action because of her disability.[15] If she does so, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action.[16]  If the employer does so, the presumption of discrimination disappears, but the plaintiff can prove discrimination by offering evidence to demonstrate that the employer's explanation is pretexual.[17]

The issues raised in AHC's motion deal only with Plaintiff's prima facie case.  It argues that Plaintiff does not have evidence to show she is "disabled" under the ADA nor the evidence to show she can perform the essential functions of her job with reasonable accommodations.  The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."[18]  AHC argues that Plaintiff has not adequately alleged an impairment that limits a major life activity nor has she provided evidence sufficient to defeat a summary judgment motion.  In response, Plaintiff points to her EEOC intake questionnaire where she asserts that her condition limits her ability to walk, stand, or sit for long periods of time and her ability to lift, carry, push, pull, or bend.[19]  In her follow-up EEOC questionnaire she states that her injury prevents her from being able to be a CPTA and that she has a hard time sleeping and breathing in addition to her other physical restrictions.[20]  She also testified in her deposition that she is unable to walk or stand for

---

[15]*Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012).

[16]*Raytheon*, 540 U.S. at 49 n.3.

[17]*Id.*

[18]42 U.S.C. § 12102(1).

[19]Doc. 32-1 at p. 41.

[20]Doc. 32-1 at p. 47.

1    extended periods of time and has difficulty holding things.[21]  Her supporting
2    documentation also includes some medical records to detail her injuries.[22]  In reply,
3    AHC asserts that the medical records were not previously produced and should be
4    excluded.  However, rather than move to exclude the evidence, AHC concedes that
5    these records likely create an issue of fact as to Plaintiff's disability status.  The court
6    agrees that Plaintiff's testimony and medical records are sufficient to raise a question of
7    fact on the issue of her disability status.[23]

8        AHC argues that even assuming Plaintiff is disabled in accordance with the
9    terms of the ADA; she nonetheless has no evidence to show she is qualified for the
10   position.  An individual is qualified if she can perform the essential functions of the job
11   with or without accommodations.  Essential functions are "fundamental job duties of the
12   employment position . . . not includ[ing] the marginal functions of the position."[24]  "If a
13   disabled person cannot perform a job's 'essential functions' (even with a reasonable
14   accommodation), then the ADA's employment protections do not apply."[25]  "If, on the
15   other hand, a person can perform a job's essential functions, and therefore is a
16   qualified individual, then the ADA prohibits discrimination" with respect to employment

17

18

19   _____

20       [21]Doc. 27-1 at p. 23 (Tracy Crane depo. at p. 71).

21       [22]Doc. 32-1 at pp. 11-14 (Plaintiff's Ex. C).

22       [23]*See, e.g., Head v. Glacier Nw., Inc.*, 413 F.3d 1053, 1058 (9th Cir. 2005) (holding that
     medical evidence is not required to raise a genuine issue of material fact regarding the
23   impairment of a major life activity and that a declaration alone can suffice), *abrogated on other
     grounds in Univ. Of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013); *Scott v. Mabus*,
24   618 Fed. Appx. 897, 900 (9th Cir. 2015) (noting that a plaintiff's testimony can be sufficient to
     establish a disputed fact so long as the testimony consists of more than conclusory
25   declarations.)

26       [24]*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 989 (9th cir. 2007) (en banc) (citing
27   29 C.F.R. § 1630.2(n)(1)).

28       [25]*Cripe v. City of San Jose*, 261 F.3d 877, 884 (9th Cir. 2001).

1  actions.[26]  While the plaintiff retains the "ultimate burden of persuading the fact finder

2  that [she] can perform the job's essential functions," the employer has the initial burden

3  of production to come forward with evidence of what duties are essential to the position

4  at issue.[27]

5         AHC contends that the essential functions of the job include "[using] push and

6  pull equipment,. . . lifting 10-290 pounds with one, two or more assistants or assistance

7  of hydraulic equipment as indicated, . . . walking, reaching, bending, lifting, grasping,

8  find hand coordination, pushing, [and] pulling . . . ."[28]  In support, AHC cites to the job

9  description for the position of rehabilitation therapist.[29]  Plaintiff argues that the job

10  description has not been properly authenticated and is therefore not admissible

11  evidence.  However, an inquiry into authenticity concerns the genuineness of an item of

12  evidence, and documents may be authenticated by review of their contents if they

13  appear to be sufficiently genuine.[30]  Indeed, the authenticity of the document does not

14  appear to be genuinely in dispute.  That is, Plaintiff concedes that the document

15  properly sets forth the physical requirements of the job,[31] and she does not otherwise

16  suggest that Exhibit 1 is not an official job description from AHC or that her signature

17  and date on the document have been falsified.  The characteristics of the document

18  itself, in terms of its appearance, contents, and substance lead the court to conclude

19

20

21

---

22  [26]*Id.* at 884-85.

23  [27]*Bates*, 511 F.3d at 991.

24  [28]Doc. 28-1 at p. 1, ¶ 2.

25  [29]Doc. 27-1 at pp. 2-7 (AHC's Ex. 1).

26
27  [30]*Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011) (citing *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 778 n. 24 (9th Cir. 2002)) (quotation marks omitted).

28  [31]*See* doc. 32 at p. 1, ¶ 2.

1   that the document has been authenticated by its distinctive characteristics and that it is

2   what it appears to be: an official job description.[32]

3        A job description prepared before hiring is relevant to determine what the

4   position's essential functions are.  A job description alone does not automatically

5   establish that the listed duties on that description are essential when the evidence

6   conflicts over what is truly an essential function of a position.[33]  Here, however, Plaintiff

7   does not point to evidence to show a conflict over what the truly essential functions of

8   the position are.  She disputes the accuracy of the job description by pointing to the fact

9   that it lists duties she was not allowed to perform as only an assistant to a rehabilitation

10  therapist, but she does not otherwise dispute that her job as a CPTA is physical in

11  nature and has physical requirements such as lifting, pushing, pulling, bending, walking,

12  and reaching.  In her EEOC questionnaire that she submitted in support of her

13  opposition, she admitted that the "manual skills" were "*necessary* to perform [her] job."[34]

14  She stated: "As a Physical Therapist Assistant at [AHC] my job *requires* frequent

15  bending, stooping, walking, carrying oxygen tanks, pushing heavy objects or people,

16  lifting heavy patients several times from various positions . . . throughout the day, every

17  Monday through Friday."[35]  Therefore, the undisputed evidence shows that physical

18  duties were not merely a marginal part of her CPTA position, and Plaintiff does not

19  point to any evidence showing a dispute as to whether the essential duties of Plaintiff's

20  job at AHC required physical activities.

21        It is also undisputed that Plaintiff could not perform these physical activities

22  unassisted.  She acknowledges that she could not continue her career as CPTA

23

24      [32]Fed. R. Evid. 901(b)(4); *Las Vegas Sands, LLC, v. Nehme*, 632 F.3d 526, 533 (9th Cir.

25  2011).

26      [33]*Cripe*, 261 F.3d at 888-89.

27      [34]Doc. 32-1 at p. 47, ¶ 2 (emphasis added).

28      [35]Doc. 32-1 at p. 54, ¶ 12d (emphasis added).

-8-

because her injuries prevented her from "perform[ing] the manual skills *necessary* to perform [her] job."[36]

The remaining question as to Plaintiff's prima facie case is whether she could nonetheless perform her essential job duties with reasonable accommodation.  Plaintiff sets forth two accommodations that she believes reasonably allow her to perform her job: (a) assigning an additional employee to perform the physical duties associated with her job; or (2) assigning her lighter, non-physical duties such as auditing charts and doing intake forms.[37]

Neither of Plaintiff's proposed accommodations can be deemed reasonable. Reasonable accommodations can include some job restructuring, but does not require elimination of any of the job's essential duties.  That is, the ADA does not require an employer "to reallocate job duties in order to change the essential function of a job."[38] Plaintiff's request to perform only non-physical tasks such as chart auditing is clearly a request to eliminate the physical tasks, which were admittedly not marginal aspects of her job, and to reallocate those duties to someone else.  The suggestion that other employees could do or assist with Plaintiff's essential tasks effectively eliminates those tasks from her job description and reallocates those duties to another employee. Indeed, courts have consistently held that it is not reasonable to require an employer to allocate other employees to complete the essential duties of another employee's work.[39]

---

[36]Doc. 32-1 at p. 47, ¶ 2 (emphasis added); doc. 27-1 at p. 19 (Tracy Crane depo. at p. 56).

[37]Doc. 32-1 at p. 53, ¶12c.

[38]*Soto-Ocasio v. Fed. Express Corp.*, 150 F.3d 14, 20 (1st Cir. 1998) (quoting *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1124 (10th Cir. 1995)).

[39]*Soto-Ocasio,* 150 F.3d at 20 (holding that it was not a reasonable accommodation to require the employer to allocate other employees to complete the work); *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 912 (7th Cir. 1996) (holding that hiring a helper to do an essential duty of a job would was not a reasonable proposed accommodation because "hiring a helper to

1    She stresses that the job description recognizes the potential for assistance from

2    others or from hydraulic equipment when lifting and therefore suggests that the

3    description itself acknowledges the reasonableness of using assistance.  However, as

4    noted by AHC, even if the job description acknowledges that an employee may need

5    assistance in lifting patients, it also states that the position requires being able to use

6    push and pull equipment, walk, reach, bend, push, and pull.  There is no mention of

7    using a team of people to perform all physical tasks.  Plaintiff also argues that the fact

8    that AHC had provided such an arrangement during the pending workers'

9    compensation claim provides an inference of reasonableness, but, as discussed above,

10   that arrangement clearly "exceeded what the law requires."  Its decision to cease

11   providing an accommodation that exceeded what the law requires does not somehow

12   make that decision a violation of the ADA.[40]

13   **B.    FMLA**

14       AHC argues that it should be granted summary judgment as to Plaintiff's FMLA

15   claim.  The FMLA makes it "unlawful for any employer to interfere with, retain, or deny

16   the exercise of or the attempt to exercise," the rights conferred to employees under the

17   act.[41]  AHC argues that Plaintiff's FMLA claim is misplaced to the extent it seeks to

18   enforce her right to a work-place accommodation.  Indeed, the FMLA does not address

19   the right to accommodation for disabled employees but, rather, protects an employee's

20   right to use a certain amount of unpaid leave for his or her own serious illness or to care

21   for family members and to return to the same or an equivalent job after using protected

22   leave.[42]  However, Plaintiff's FMLA claim is not focused on accommodations but, rather,

23   does in fact address Plaintiff's right to take leave.  She alleges that she was eligible for

24   _____

25   perform the overhead work would mean the helper would de facto perform [the plaintiff's] job").

26   [40]*See Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1528 (11th Cir. 1997).

27   [41]29 U.S.C. § 2615(a).

28   [42]29 U.S.C. §§ 2612(a)(1), 2614(a)(1).

1  FMLA leave, but that AHC failed to advise her of her right to take leave and terminated
2  her rather than allow her to take the required leave.  AHC argues that her claim must
3  nonetheless fail because she did not actually request to take FMLA leave and because
4  AHC in fact gave Plaintiff leave until such time as she was able to provide a doctor's
5  clearance.  The court agrees that Plaintiff has not made a showing of interference.
6  Plaintiff does not even allege, much less point to evidence to show, that she provided
7  notice of her intent to take FMLA leave.[43]  Nor is there anything in the record to show
8  that AHC subsequently denied her FMLA request; rather, it is undisputed that Plaintiff
9  was told she could be put back on the schedule when she had a doctor's unrestricted
10 clearance to work.[44]  Indeed, Plaintiff does not necessarily disagree.  Rather, Plaintiff
11 responds that "[t]his case does not present [a] traditional fact pattern" and asserts that
12 her claim is based on the fact that AHC "essentially forced [her] to take a leave of
13 absence that she had not requested and that she did not need."[45]  As AHC points out,
14 however, Plaintiff's response is directly contrary to the allegations in her complaint.  As
15 noted above, in the complaint she alleges she was denied FMLA leave.  "Factual
16 assertions in pleading and pretrial orders, unless amended, are considered judicial
17 admissions conclusively binding of the party who made them."[46]  Plaintiff therefore
18 cannot now assert that she was forced to take leave.

19      Regardless, even removing the pleading issue, Plaintiff has not set forth a viable
20 interference claim.  "Forced or involuntary leave is not, . . . in and of itself, actionable

---

[43]*See Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014) (noting that a prima facie case of FMLA interference requires an employee to establish that he was eligible for FMLA leave, his employer was covered by the FMLA, he was entitled to leave under the FMLA, he provided sufficient notice of his intent to take leave, and the employer denied the leave).

[44]Doc. 32 at p. 4 ¶ 8; doc. 27-1 at p. 22 (Tracy Crane depo. at p. 63).

[45]Doc. 33 at p. 13.

[46]*Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

-11-

1    under the FMLA."[47]  An interference claim could arise from an allegation that an

2    employer forced the employee to take leave that she did not request or need if the

3    employee can show she was forced to take leave even though she did not have a

4    serious health condition that precluded her from working.[48]  That is not the situation

5    alleged here.  Moreover, such an interference claim only ripens "when and if the

6    employee seeks FMLA leave at a later date, and such leave is not available because

7    the employee was wrongfully forced to use FMLA leave in the past."[49]  Again, that is not

8    the situation alleged here.

9    **C.**     **Objections to AHC's statement of facts**

10        Plaintiff sets forth various objections to AHC's statement of facts.  Except for

11    Plaintiff's objection to AHC's job description at Exhibit 1, which the court has ruled

12    admissible, the court does not need to specifically address the objections in detail

13    because the court did not rely on the allegedly objectionable material in its decision.

14    Many of Plaintiff's objections are based on the fact that AHC's statement of facts

15    describes AHC's past accommodations for Plaintiff as "extraordinary" and conclusively

16    states that the job duties she could no longer perform were "essential."  The court

17    agrees that AHC's counsel's assertions of legal conclusions as fact are not evidence

18    and recognizes that Plaintiff disagrees with those legal conclusions.  The court did not

19    take counsel's statements as fact.  The court made its own legal conclusions based

20    only on the admissible evidence provided by the parties: Plaintiff's EEOC documents,

21    Plaintiff's deposition, and the job description provided by AHC.  Plaintiff also objects to

22    AHC's inclusion of details about the workers' compensation claim, arguing that the

23    results of the independent medical exam in relation to Plaintiff's workers' compensation

24

25    [47]*Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 175 (2d Cir. 2006); *Heyne v. HGI-*

26    *Lakeside, Inc.,* 589 F. Supp. 2d 1119, 1128 (S.D. Iowa 2008).

27    [48]*Wysong v. Dow Chemical Co.*, 503 F.3d 441, 449 (6th Cir. 2007).

28    [49]*Id.*

1   claim are not relevant or material to the determination of whether Plaintiff is disabled.
2   The resolution of the workers' compensation claim, while relevant, is not determinative
3   of whether Plaintiff suffered from a disability as defined by the ADA, but as noted
4   above, the court concluded in favor of Plaintiff on that issue, agreeing that Plaintiff
5   provided sufficient evidence to support a prima facie case of disability.  The
6   independent medical exam and the results of Plaintiff's workers' compensation claim
7   are not relevant to the remainder of the court's ADA analysis and were not considered.

8                           **V.  CONCLUSION**

9          Based on the preceding discussion, AHC's motion for summary judgment at
10  docket 26 is GRANTED.  The clerk is directed to enter judgment in favor of AHC on all
11  counts and close the case.

12         DATED this 24th day of September, 2016

13

14                                    /s/ JOHN W. SEDWICK
                             SENIOR JUDGE, UNITED STATES DISTRICT COURT
15

16

17

18

19

20

21

22

23

24

25

26

27

28